UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEROY ALFORD,<br><br>    Plaintiff,<br><br>    v.<br><br>DEFENSE INTELLIGENCE AGENCY,<br><br>    Defendant. | Civil Action No. 10-631 (JEB) |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Leroy Alford worked as a management analyst for Defendant Defense Intelligence Agency. After being terminated from his position and subsequently reinstated, he alleges that the Agency repeatedly retaliated against him. He then filed this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a), and other federal statutes. DIA now moves for summary judgment on the six remaining counts of Plaintiff's Complaint, asserting that his claimed instances of retaliation were not materially adverse employment actions and that, even if they were, Alford has not shown that the Agency's asserted reasons were in fact pretexts for unlawful retaliation. Because the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to any of the remaining counts, it will grant Defendant's motion.

**I.   Background**

Plaintiff began his employment with DIA on June 26, 2006, as Deputy Chief of the Force Structure Management and Compensation Office (FE-3). See Statement of Undisputed Material Facts (SUMF), ¶¶ 13-14. He was terminated on September 29, 2007, for unsatisfactory performance. Id., ¶¶ 22, 26. Because Plaintiff had been employed for less than the Agency's

1

two-year probationary period, he was not given procedural due process. Id., ¶¶ 23-24. Plaintiff then contacted an EEO Counselor and also appealed his termination to the Merit Systems Protection Board. Id., ¶¶ 27-28. He was subsequently reinstated by the Agency on April 9, 2008. Id., ¶ 32. Plaintiff alleges that he was then subjected to numerous forms of retaliation for having filed his EEO and MSPB complaints. See Compl. at 9-11. In April 2010, Alford filed this lawsuit.

DIA moved to dismiss the case or, in the alternative, for summary judgment in September 2010. Plaintiff then responded by moving for a continuance to conduct discovery under Fed. R. Civ. P. 56(d). After the case was transferred to this judge, the Court granted Defendant's motion in part and denied it in part. See Memorandum Opinion and Order of October 24, 2011 (ECF No. 22). The Court dismissed Plaintiff's non-Title VII claims as well as his discrimination-based Title VII claims, but granted Plaintiff's Rule 56(d) motion as to his Title VII retaliation claims. Id. After discovery, DIA brought this Motion for Summary Judgment as to each of Plaintiff's remaining causes of action, which the Court now considers.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [his] favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50.

### III.   Analysis

At this stage, six counts of the Complaint remain. Each cites a specific instance in which, in violation of Title VII, Defendant allegedly retaliated against Plaintiff for engaging in a variety of protected activities, including filing complaints with Defendant's Equal Employment and

Discrimination Office and the Merit Systems Protection Board. Count II complains of his reinstatement without supervisory duties; Count III alleges that he was "not [given] work assignments, duties and responsibilities that were previously assigned [to him] as Deputy" upon his return. See Compl., ¶¶ 52-53. Plaintiff further contends that he was denied overtime (Count VI), placed on a Performance Improvement Plan (PIP) (Count VII), denied the opportunity to serve as acting chief of the office (Count VIII), and given a poor performance review (Count IX). As to Counts III, VI, and IX, Defendant is entitled to summary judgment because Plaintiff has not alleged a materially adverse employment action. Defendant is entitled to summary judgment on Counts II, VII, and VIII, moreover, because Alford cannot show that DIA's reasons were in fact pretexts for retaliation. The Court will address each in turn.

   A. Material Adversity

Like its sister circuits, the D.C. Circuit "analyz[es] . . . retaliation claim[s] . . . us[ing] the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Smith v. District of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005) (collecting cases). "Under this framework, the plaintiff must establish three elements of a prima facie case of retaliation: first, that [he] 'engaged in a protected activity'; second, that [he] 'was subjected to adverse action by the employer'; and third, that 'there existed a causal link between the adverse action and the protected activity.'" Smith, 430 F.3d at 455 (quoting Jones v. Wash. Metro. Area Transit Auth., 205 F.3d 428, 433 (D.C. Cir. 2000)). "[A] 'materially adverse' action for purposes of a retaliation claim is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Gaujacq v. EDF, Inc., 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).

Defendant argues that the actions underlying Counts II, III, VI, VIII, and IX were not materially adverse. See Mot. at 8-14. The Court, however, finds that only Counts III, VI, and IX fail to meet this threshold. As the remaining counts will be dismissed for lack of evidence of pretext, see Section III.B, *infra*, the Court need not discuss their material adversity.

    1. *Count III*

Count III alleges that Defendant retaliated against Plaintiff after he was reinstated by "not [giving him] work assignments, duties and responsibilities that were previously assigned [to him] as Deputy." See Compl., ¶ 53. Mary Goodwin, Chief of FE-3, however, testified without contradiction that to the extent that Alford's duties changed when he returned, they were still "the same kinds of things that [Goodwin herself] was doing." See Mot., Exh. 16 (Excerpts from Transcript of January 24, 2011, Merit Systems Protection Board Hearing) at 27.

While Alford offers very little in the way of specific evidentiary examples of changes to his duties upon his return, he did testify that his being required to report back to his supervisors after attending meetings on behalf of the office was an example of a retaliatory change. See Mot., Exh. 5 (EEOC Testimony of Leroy Alford) at 87, 100-101. Goodwin testified, however, that this requirement was merely "intended to provide a record of what [Plaintiff did] as a representative of the organization, particularly . . . [at] . . . senior level meetings . . . to know what those results were, what are the implications, what homework assignments [were given]." Id. (EEOC Testimony of Mary Goodwin) at 237.

Plaintiff fails to show how this requirement rises to the level of an adverse employment action that would have "dissuade[d] a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 57. Though he may have been frustrated by it, Alford points to no evidence that this requirement was inappropriate for his grade or position, or that

"[his] work hours or [his] pay were affected by the [requirement]." Sewell v. Chao, 532 F. Supp. 2d 126, 136 (D.D.C. 2008). As this Court previously held in Bailey v. Wash. Metro. Area Transit Auth., 810 F. Supp. 2d 295 (D.D.C. 2011), "[W]hile Plaintiff may well have found [reporting back to his supervisors] uncomfortable . . . this is the type of work typical employees are required to do every day. Even if [it] were not, such 'petty slights [and] minor annoyances' do not rise to the level of a materially adverse employment action." Id. at 301 (quoting Burlington Northern, 548 U.S. at 68). Defendant is accordingly entitled to summary judgment on Count III.

        2. *Count VI*

In Count VI, Plaintiff alleges that he was denied overtime in retaliation for his protected activity. See Compl., ¶ 56. Alford testified that this denial occurred when a meeting appeared likely to run past his normal departure time, and he asked his supervisor whether he would receive compensatory time if he remained. See Alford EEOC Testimony at 105-106. His supervisor instructed him to leave at his normal time, indicating that compensatory time would not be approved. See Goodwin EEOC Testimony at 252.

Plaintiff does not demonstrate any tangible harm associated with this incident, nor does he explain how such an incident would have "dissuade[d] a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 57. It is certainly plausible that Alford was disappointed by his supervisor's decision and felt aggrieved at that moment. Our Circuit, however, notes that "not everything that makes an employee unhappy is an actionable adverse action." Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (internal citations and quotation marks omitted). Given the complete absence of tangible injury over and above any "[p]urely subjective injuries, such as . . . dissatisfaction," the Court is unable

to find that Alford experienced an adverse employment action for purposes of his retaliation claim in this instance. Forkkio v. Powell, 306 F.3d 1127, 1130 (D.C. Cir. 2002). Summary judgment is thus also warranted as to Count VI.

      3. *Count IX*

Count IX alleges that DIA retaliated against Plaintiff by issuing him a poor performance appraisal in May 2008. See Compl., ¶ 59. The Agency argues that, as there were no objectively discernible consequences resulting from the performance appraisal, the appraisal itself cannot constitute a materially adverse employment action as a matter of law. See Mot. at 14. The Agency's position is consistent with clear governing law.

In this Circuit, a "thick body of precedent . . . refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions." Brown v. Brody, 199 F.3d 446, 458 (D.C. Cir. 1999). Rather, because "job-related constructive criticism . . . 'can prompt an employee to improve [his] performance'. . . performance reviews typically constitute adverse actions only when attached to financial harms." Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (internal citations omitted); see also Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) ("'[F]ormal criticism or poor performance evaluations are [not] necessarily adverse actions' and they should not be considered such if they did not 'affect[ ] the [employee's] grade or salary.'") (internal citations omitted).

Indeed, even the cases Plaintiff relies on here are readily distinguishable. In support of his position, Plaintiff cites Weber v. Battista, 494 F.3d 179 (D.C. Cir. 2007), Burke v. Gould, 286 F.3d 513 (D.C. Cir. 2002), and Russell, 257 F.3d at 815. See Opp. at 11-12. In each case, the D.C. Circuit held that a poor performance evaluation could be materially adverse where the plaintiffs "sufficiently alleged loss of a 'tangible, quantifiable award' which had been received

'nearly every year'" prior to the plaintiffs' protected activity.  Weber, 494 F.3d at 185 (quoting Burke, 286 F.3d at 522).  Alford, on the contrary, presents no evidence that he is similarly situated to these individuals.  Even as his Opposition cites these cases, Plaintiff neither shows that he suffered a tangible harm of any kind from his poor evaluation nor presents evidence of the kind of history of strong performance (and receipt of concomitant performance awards) that typified the Weber, Burke, and Russell plaintiffs.  As a result, the Court is again unable to find that Plaintiff experienced a materially adverse employment action in the form of his May 2008 performance review and will thus grant summary judgment to DIA on Count IX.

    B.  Pretext

As to Counts II, VII, and VIII, the Court holds that, even assuming Plaintiff has successfully alleged a materially adverse employment action, Defendant is still entitled to summary judgment because it has successfully asserted legitimate, nonretaliatory reasons for its actions, and Plaintiff has adduced no evidence that these reasons are in fact pretexts for retaliation.  Where "an employee has suffered an adverse employment action and an employer has asserted a legitimate, non[retaliatory] reason for [its employment] decision," the McDonnell Douglas framework "'drops out of the picture,'" and the Court deploys a simpler analysis:

> [I]n considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)).

Though Brady itself concerned a Title VII discrimination claim, its streamlined framework applies to retaliation claims as well. See Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (Brady "principles apply equally to retaliation claims"). As to the remaining counts, therefore, this Court "need not—and should not—decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas." Brady, 520 F.3d at 494 (emphasis in original); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) (when defendant offers evidence that plaintiff was terminated for legitimate, nondiscriminatory reason, sole remaining issue is "discrimination *vel non*") (citing United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)).

Instead, the Court's task here is to determine whether Alford has produced sufficient evidence for a reasonable jury to find that Defendant's asserted reasons for each action were mere pretexts for illegal retaliation. See Brady, 520 F.3d at 494; see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). As the D.C. Circuit has held, however, "'[E]ven if [the employee] show[s] that [the asserted reason] was not the actual reason for his [adverse employment action], he still would have to demonstrate that the actual reason was a . . . discriminatory [or retaliatory] reason.'" Gilbert v. Napolitano, 670 F.3d 258, 261 (D.C. Cir. 2012) (quoting Brady, 520 F.3d at 496 n.4) (alterations in original); see also Cones v. Shalala, 199 F.3d 512, 519 (D.C. Cir. 2000) (evidence must be sufficient for a reasonable jury "to conclude that [the asserted] rationale was not just pretext, but pretext for discrimination") (emphasis in original). That is, Plaintiff's burden of "demonstrat[ing] that the proffered reason was not the true reason . . . merges with the ultimate burden of persuading the court that [he] has been the victim of intentional [retaliation]." Burdine, 450 U.S. at 256. Defendant is entitled to summary judgment only if the evidence, viewed in the light most favorable to Plaintiff and

9

drawing all reasonable inferences in his favor, is such that "no reasonable jury" could find that Defendant's asserted reasons were in fact pretexts for retaliation. See Hamilton v. Geithner, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (citing Jones v. Bernanke, 557 F.3d 670, 674, 681 (D.C. Cir. 2009)).

1. *Count II*

Count II alleges that Defendant retaliated against Plaintiff after he was reinstated by depriving him of supervisory duties. See Compl., ¶ 52. The Agency argues that any such changes in Alford's day-to-day job duties – to the extent any occurred – were the result of a reorganization of the FE-3 office that took place following his original termination, rather than any unlawful retaliation. See Mot. at 15. During the period he was gone, Alford's position as Deputy went unfilled, and FE-3's two "branches" were re-designated as "divisions," with their respective supervisors reporting directly to the Chief of FE-3, Mary Goodwin. See SUMF, ¶¶ 33-34. Joseph Fasching, the Agency's Chief Financial Officer, testified that "when [Alford] came back . . . it was [Fasching's] decision . . . to keep the supervisory structure that was intact before he came back . . . because [he thought] that was the proper structure for the office." See id., ¶ 35; see also Mot., Exh. 6 (EEOC Testimony of Joseph Fasching) at 27-28. Likewise, Goodwin testified that to the extent that Alford's duties changed when he returned, they were still "the same kinds of things that [she] was doing." See MSPB Hrg. at 27.

In response, Plaintiff offers only his own testimony that it was "obvious" that the Agency retaliated against him. See Mot., Exh. 14 (Excerpts from the Deposition Testimony of Leroy Alford) at 59. It is not enough for Plaintiff to simply testify that he was retaliated against. In this Circuit, "'there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case . . . that could withstand a summary judgment motion.'" Desmond v.

10

Mukasey, 530 F.3d 944, 964 (D.C. Cir. 2008) (quoting George v. Leavitt, 407 F.3d 405, 414 (D.C. Cir. 2005)). That said, "Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). The problem for Plaintiff, then, is not that he is the one asserting that it is "obvious" he was retaliated against, but that "[a]bsent supporting facts – and [he has] provided none – a jury would be in no position to assess [his] claim" that the Agency had in fact retaliated against him. Id. "Accepting such conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." Id.; see also Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993) (discrimination plaintiff asserting superior qualifications "must support his allegations . . . with facts in the record; a mere unsubstantiated allegation of superior qualifications creates no genuine issue of fact and will not withstand summary judgment").

In fact, when asked for particulars in his deposition, Alford testified that the retaliation must have occurred because, "for example," the Agency [did not] follow proper guidelines when placing him on the PIP. See Alford Depo. at 59. Of course, placing him on the PIP has nothing to do with deprivation of his supervisory duties. Any organizational change that took place while he was not employed by the Agency, furthermore, could not have been retaliatory. Because no reasonable jury could conclude from Plaintiff's naked, conclusory allegations of retaliatory motive that Defendant's asserted reasons were in fact pretexts for unlawful retaliation, the Court will grant summary judgment as to Count II.

2. *Count VII*

In Count VII, Plaintiff alleges that DIA retaliated against him by placing him on a PIP. See Compl., ¶ 57. In response, Defendant argues that Plaintiff was placed on the PIP for the simple reason that his performance in fact needed improvement. See Mot. at 20. According to the PIP memorandum, Alford "exhibited a pattern of failing to adequately complete assignments . . . by the scheduled due date," submitted "written communications contain[ing] numerous errors," failed to "demonstrate[] critical thinking skills or engage[] and collaborate[] constructively with others," and failed to "demonstrate[] technical proficiency in manpower and force structure." See Mot., Exh. 1 (Excerpts from Report of EEO Investigation) at 236-37.

Plaintiff does not appear to contest that this reason, if believed, would be plainly non-retaliatory. Instead, he offers only his bare assertions that his work was satisfactory and that the "wrong criteria were used" in placing him on the PIP. See Opp. at 14. In addition, he alludes to inconsistencies between Goodwin's deposition testimony and other documents in the record. See Opp. at 14-16. The first two of these assertions are insufficient to demonstrate pretext; the third is simply off point.

As discussed in Part III.B.1, *supra*, while a discrimination plaintiff's own deposition testimony may create a genuine issue of material fact sufficient to survive summary judgment, Alford fails to meet this standard. He offers only his deposition testimony that his performance was adequate – a statement that, once again, is "so conclusory as to come within an exception to [the] rule" that the nonmovant's statements must be accepted as true. Greene, 164 F.3d at 675. Record evidence of Plaintiff's satisfactory performance might have supported this assertion and created a triable issue, but Plaintiff has failed to provide any such evidence.

Plaintiff's assertion that "the wrong criteria were used," see Opp. at 14, is similarly unavailing. Plaintiff appears to be referring to a typographical error in the PIP memorandum itself: the reference line of the document refers to "DIA Instruction 1404.001, Performance Appraisal System." See Mot. at 22; EEO Investigation Report at 235. At the time the PIP memorandum was written, the correct title of DIA Instruction 1404.001 was "Performance Management for the Defense Civilian Intelligence Personnel System." See Mot. at 22. The Agency asserts that the typographical error occurred because this change in title occurred only one week before the PIP memorandum was issued. See Mot., Exh. 15 (Performance Management for the Defense Civilian Intelligence Personnel System).

In certain cases, an agency's failure to follow its own regulations or established procedure can provide sufficient evidence of pretext to withstand summary judgment. See, e.g., Lathram v. Snow, 336 F.3d 1085, 1093-94 (D.C. Cir. 2003) (holding that unexplained inconsistency between hiring process used for alleged discriminatory hire and that used for other comparable positions created at the same time "[could] justify an inference of discriminatory motive"); Cones, 199 F.3d at 519-20 (holding that jury could have concluded that agency claim that it was downsizing, while it promoted three of the black plaintiff's white peers, was pretext for discrimination). The alleged inconsistency here, however, is a far cry from those cases. The Agency appears to have made a typographical error following the issuance of a new instruction, and it does not appear that this error was made only as to Plaintiff's PIP or that this procedural deficiency singled him out in any way. No reasonable jury could conclude pretext for discrimination from the presence of a mere typo.

Finally, Alford alleges that Goodwin's testimony is inconsistent with other documents in the record in this case. See Opp. at 14-16. Even if there were an inconsistency, however – and

the Court can find none here – it would be irrelevant to the question of whether Plaintiff has shown sufficient evidence of pretext on this claim. Plaintiff's alleged "inconsistencies" concern Goodwin's testimony regarding his reinstatement without supervisory duties – a decision in which he acknowledges Goodwin did not even participate – and have nothing to do with his being placed on a PIP. While the Court appreciates the need to construe Plaintiff's *pro se* filings liberally, it sees no evidence here from which a jury could find that Defendant's assertion that he was placed on the PIP because his performance was inadequate was in fact a pretext for unlawful retaliation. The Court, accordingly, will grant summary judgment for Defendant as to Count VII.

        3.  *Count VIII*

In Count VIII, Plaintiff alleges that DIA retaliated against him by denying him the opportunity to serve as acting chief of the office while his supervisor was on vacation, from August 18-22, 2008. See Compl., ¶ 58; Alford EEOC Testimony at 117-18. In response, the Agency argues that it could not have designated Alford as acting chief at the time because he had just been placed on a PIP. See SUMF, ¶ 45; Mot. at 23-24. Plaintiff does not appear to contest that this reason, if believed, would be plainly nonretaliatory.

Alford argues instead that the Agency's asserted reason is "circular" because "he should not have been on a PIP in the first place." See Opp. at 16. This argument is once again unavailing. First, the Court has just found that the PIP was justified and not an act of retaliation. In any event, accepting Plaintiff's argument would contravene this Circuit's clear precedent. In Brady, the plaintiff sought to debunk his employer's purported reason for disciplining him – an allegation that he had sexually harassed a colleague – by "conten[ding] that the underlying sexual harassment incident never occurred." 520 F.3d at 496. The D.C. Circuit rejected his argument, holding that the plaintiff "misunderst[ood] the relevant factual issue. The question is

not whether the underlying sexual harassment incident occurred; rather, the issue is whether <u>the employer honestly and reasonably believed</u> that the underlying sexual harassment incident occurred." <u>Id.</u> (emphasis in original). Where there was evidence that the employer did so believe, "summary judgment for [the defendant] was proper." <u>Id.</u> To have held otherwise would have "allow[ed the plaintiff] to end-run summary judgment" and "mean that every employee who is disciplined . . . for alleged misconduct could sue for employment discrimination . . . and – merely by denying the underlying allegation of misconduct – <u>automatically</u> obtain a jury trial." <u>Id.</u> (emphasis in original). As in <u>Brady</u>, the Agency reasonably believed Plaintiff was appropriately on a PIP, as explained in Section III.B.2, *supra*. Allowing Plaintiff to survive summary judgment based on his argument would put this Court in the position of "micro-manag[ing] an employer's . . . policies when resolving a claim of [retaliation]." <u>Id.</u> The Court will thus grant Defendant's Motion as to Count VIII of the Complaint.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment as to all remaining counts of the Complaint. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg<br>
JAMES E. BOASBERG<br>
United States District Judge

Date:  <u>December 12, 2012</u>